**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TARIQ ABNEY**, Plaintiff, v. | No. 20 CV 3621 |
| | Judge Ellis |
| **BOARD OF EDUCATION OF THE CITY OF CHICAGO** d/b/a City of Chicago School District 299 d/b/a Chicago Public Schools, Defendant. | Magistrate Judge Cummings |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

By his attorneys of record, the plaintiff, TARIQ ABNEY ("Abney"), responds to the motion filed by the defendant, BOARD OF EDUCATION OF THE CITY OF CHICAGO ("Defendant"), styled "**Defendant's Motion to Dismiss Count IV of Plaintiff Tariq Abney's Complaint**" [Doc. 20] as follows:

## I. SUMMARY

When stripped to its core, Defendant's motion claims Abney must plead more facts to survive Rule 12. But, "in the context of a straight-forward employment discrimination case, courts have found that largely conclusory statements are sufficient." *Jibson v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 18 C 5594, at *8 (N.D. Ill. May 29, 2019) (citing *Swanson v. Citibank*, N.A., 614 F.3d 400, 404-05 (7th Cir. 2010)). To state a claim at the pleading stage, "plaintiffs need not plead evidence; they need only to allege enough to make their claim plausible." *Carmona v. Professionals, Inc.*, No. 15 C 8362, at *4 (N.D. Ill. Apr. 14, 2017) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008). Indeed, "[s]pecific facts are not [even] necessary." *Swanson*, 614 F.3d 400 at 404 (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)).

Defendant tries to graft the more stringent summary judgment standard onto its Rule 12 motion by citing cases that treat "hostile work environment" claims *in the context of summary judgment*[1] (the cases Defendant cites, which actually treat the Rule 12 standard, are all distinguishable from the captioned case).

Abney's complaint alleges he was harassed throughout his employment because of his race (Black or African American) and that the harassment became progressively worse throughout his employment – ultimately culminating in the wrongful termination of his employment. In a strikingly similar case (albeit one treating the more stringent summary judgment standard), the Seventh Circuit jettisoned the confusing, and often erroneously applied, "convincing mosaic" language that had invaded employment discrimination cases by refocusing on "the sole question that matters: Whether a reasonable juror could conclude that [the plaintiff] would have kept his job if he had a different ethnicity, and everything else had remained the same." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016) (Easterbrook, J.) (the plaintiff in *Ortiz* had also alleged harassment that culminated in termination). Here, when Abney's allegations are taken as true, as they must be at this stage, a reasonable juror could indeed conclude Abney would have kept his job if he were of a different race.

Defendant focuses entirely on the fact that Abney pleaded he was harassed because of his race, but completely ignores the fact that he also pleaded he was fired because of his race. Defendant does this because the bar Abney must cross *to survive summary judgment* with a "hostile work environment" claim is higher than it would be with a wrongful termination claim. However, "'[c]omplaints plead grievances, not legal theories,' and a plaintiff's complaint need only 'spell[ ] out his grievance.'" *Prayitno v. Nextep Funding LLC*, No. 17 C 4310, at *8 (N.D.

---

[1] (*Vance v. Ball State University*, 646 F.3d 461, 469 (7th Cir. 2011); *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018); and *Boebel v. Combined Insurance Co. of America*, No. 02 C 1772, 2004 U.S. Dist. LEXIS 535, at *4, 6 (N.D. Ill. Jan. 16, 2004)).

Ill. June 22, 2020) (quoting *Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020)). Abney has done exactly that in his complaint by stating what happened and how it harmed him. He pleaded that, because of his race, Defendant: suspended him without pay; fired him; and subjected him harassment throughout the course of his employment. Comp. at ¶¶ 82-4, 87-90, 92-4. He pleaded plausible facts sufficient to put Defendant on notice of what his claims are about. See *Swanson*, 614 F.3d at 405-6. While perhaps later Abney may need to produce evidence to satisfy his burden of production in the context of summary judgment, he need not do so now at the pleading stage – and he need not plead more facts than he already has in order to survive Rule 12. See *Id.* at 404; See also *Jibson*, No. 18 C 5594, at *8 (collecting cases).

## II. LEGAL STANDARD

In the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):

> "the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter*, 17 F. Supp. 3d at 756. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

*Clay v. Cook Cty.*, 2017 WL 878451, at *2 (N.D. Ill., 2017) (internal quotation marks, parentheticals and citations unaltered).

Ultimately, "[a] complaint that invokes a recognized legal theory . . . and contains plausible allegations on the material issues . . . cannot be dismissed under Rule 12." *Robrinzine v. Big Lots Stores, Inc.,* 156 F. Supp. 3d 920, 925 (N.D. Ill. 2016) (citing *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) and *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## III. ARGUMENT

### A. Defendant "cherry-picks" examples of conduct alleged in the complaint to imply they were the only instances of harassment; they were not. When Abney's complaint is assessed as a whole, one can clearly see they are *examples* that *describe* pervasive, and oft-repeated, conduct.

Abney's complaint provides Defendant with adequate notice of what his claims are about: that Defendant harassed him and, ultimately fired him, because of his race. The facts he pleaded are more than sufficient to find his allegations rise above mere speculation (as the harassment was perpetrated by supervisory employees of Defendant who expressly stated their belief in the negative stereotype that African Americans are substandard workers).

The Court "reads the complaint and assesses its plausibility as a whole." *Clay*, 2017 WL 878451, at *2 (Citing *Atkins*, 631 F.3d at 832). "'Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive.'" *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (quoting *Hall v. City of Chicago*, 713 F.3d 325, 331 (7th Cir.2013)) (in the context of summary judgment). Defendant wrongly invites the Court to do just that when it "cherry-picks" the examples of harassment Abney alleged, setting them forth starkly without the context supplied in the complaint (and thus invites the Court to misapply the summary judgment standard at the pleading stage).

Contrary to Defendant's assertion, Abney did not simply allege isolated incidents of objectionable conduct like the plaintiff did in *Bakker v. Mokena Fire Prot. Dist.*, No. 19 C 5586 (N.D. Ill. Mar. 9, 2020) (one of the cases treating Rule 12 upon which Defendant relies). Rather, he alleged:

> Defendant subjected Abney to a hostile work environment that became increasingly hostile during the course of his employment.

Comp. at ¶ 81.

> Defendant subjected Abney to pervasive and ongoing harassment that centered on his race: Black or African American.

*Id.* at ¶ 82.

> Among other things, Abney's superiors within Defendant's organization (who were predominantly Hispanic) would ***often*** call to him by saying "boy" instead of using his name.

*Id.* at ¶ 83 (emphasis added) (parenthetical in original).

> Among other things, Abney's superiors within Defendant's organization would ***often*** tell Abney that his predecessor was a better worker than Abney because he was Hispanic; on one occasion in particular during the 2018 school year, a cook told Abney in front of Abney's manager that Abney would work faster and better if he were Hispanic – in front of Abney and the cook, Abney's manager nodded her head "yes" in agreement and verbally expressed agreement by saying "uh-huh."

*Id.* at ¶ 84 (emphasis added).

This alone is enough. It shows Abney was often subjected to racial epithets – "boy" – and was often subjected to negative, racial stereotypes about work ethic, and that such conduct was perpetrated by supervisory employees and ratified by Abney's manager. Abney pleaded more however. Defendant subjected him to unwarranted, hypervigilant monitoring and pervasive badgering: taking pictures and videos of him as he performed his job duties; finding fault with the smallest minutiae when evaluating his work; inviting and encouraging his co-workers to unjustifiably criticize his work; requiring him to re-do tasks he had already performed, when nothing was objectively wrong with his work; calling him "slow" without objective justification; telling him he was not a good worker without objective justification; telling him "I think you should quit because they are trying to fire you." *Id.* at ¶¶ 85-89. Abney's supervisor would make him wait outside for ten to fifteen minutes before she "buzzed"

him into the building to work each morning, but would not make his Hispanic co-workers' wait. *Id.* at ¶ 90. Ultimately, Defendant terminated Abney's employment. *Id.* at ¶ 93.

In *Bakker*, upon which Defendant relies, the plaintiff had in fact identified only three, isolated instances, that had occurred over the course of two and a half years, in which his superiors made off-color, teasing remarks about his perceived sexual orientation. 2020 U.S. Dist. LEXIS 40147 at 2-3. Conversely, Abney alleged at least *nine different types* of offensive conduct perpetrated by his superiors, and claims they occurred pervasively throughout the course of his employment – becoming progressively worse until he was ultimately fired. Reading the complaint as a whole, one can clearly see Abney did not merely plead that, on one occasion, Defendant engaged in unwarranted, hypervigilant monitoring of his work and badgering. Nor did he for that matter plead Defendant engaged in such conduct on one hundred occasions. Rather, Abney alleged that such conduct was pervasive throughout his employment and specifically provided *examples* of Defendant's conduct *among other things*.[2] Must the complaint include an exhaustive, daily log of each and every slight? Each and every utterance of "boy" by Abney's boss? Of course not.[3] "[P]laintiffs need not plead evidence; they need only to allege enough to make their claim plausible." *Carmona*, No. 15 C 8362, at *4 (citing *Tamayo*, 526 F.3d at 1085). Abney has done exactly that.

Unlike in *Bakker*, where the defendant's conduct truly consisted of only three, isolated instances of off-color teasing, Defendant's conduct in the captioned case was "over the top" and expressly racist. Moreover, in *Bakker*, the plaintiff had not clearly pleaded that a termination

[2] If required to amend, Abney could plead even more examples, such as: his manager would intentionally throw fruit and other food items onto areas of the floor that Abney had just cleaned, and then order him to clean it again.

[3] Responding to the defendants' characterization, that the plaintiffs' provision of *examples* (of construction materials that had moved in interstate commerce), was "conclusory," the court in *Juarez v. Sobie Builders, Inc.* said "As plaintiffs ask, must they 'identify the particular batch and lot numbers of the acetylene they used to cut steel in their demolition work?' . . . . Of course not." *Juarez v. Sobie Builders, Inc.*, No. 09 C 4671, at *5 (N.D. Ill. Dec. 5, 2012).

occurred (though the court noted a termination was referenced cryptically). 2020 U.S. Dist. LEXIS 40147 at 11. But in Abney's case, Defendant's racially motivated harassment did in fact culminate with his firing. Comp. at ¶¶ 93-94. "The sole question that matters [even in the context of *summary judgment*, is]: Whether a reasonable juror could conclude that [Abney] would have kept his job if he had a different ethnicity, and everything else had remained the same." *Ortiz*, 834 F.3d at 764. Reading the allegations in Abney's complaint as a whole, a reasonable juror could indeed conclude that Abney would not have been fired if he were of a different race.

"[E]laborating on the complaint is exactly what plaintiffs are supposed to do in discovery. *See Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ('A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents.')." *Prayitno*, No. 17 C 4310, at *10 (N.D. Ill. June 22, 2020) (parenthetical and citation in original). The Oxford English Dictionary defines the rather obscure word "limn," a transitive verb, as "[to] [d]epict or describe in painting or words."[4] By its very nature, a depiction or description is an *example*; it is not an exhaustive marshalling of evidence. In his complaint, Abney plausibly described harassment and termination based on race. He described what happened and how it harmed him – he spelled out his grievance. See *Id.* at 8. "[Y]ou need a theory to *decide* which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet*, 953 F.2d at 1078 (emphasis added); see also *Koger*, 950 F.3d at 974.

**B. In his complaint, Abney tied Defendant's conduct to racial discrimination, and supervisory employees' frequent use of the racial slur "boy" – directed to Abney – is in itself enough to sustain a claim for hostile work environment even in the context of *summary judgment*, let alone Rule 12.**

[4] https://www.lexico.com/en/definition/limn (last accessed 10/4/20).

Defendant cites *Concentra* for the premise that a plaintiff can plead herself out of court by failing to allege sufficient facts. Mtn. p. 3 ("Legal Standard"). However, in *Concentra*, the court drew a distinction between what is necessary to plead discrimination versus retaliation. 496 F.3d at 782 ("The simple allegation of racial discrimination described in *Bennett* [*v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998)] is factually richer than the empty assertion of Title VII retaliation here"). The court felt that, in order to provide the defendant sufficient notice of what action allegedly led to retaliation against him, the plaintiff needed to allege more than the simple allegation "the defendant retaliated against me because I engaged in protected activity." *Id.* (citation and quotation marks omitted).

An allegation of retaliation:

> for some unspecified act does not narrow the realm of possibility nearly as much [as the simple allegation in *Bennett*]. Further, once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim. Requiring a more detailed complaint in *Bennett* would have replicated the inefficient chase for facts decried in *Bennett* . . .

*Id.*

Here, Abney described Defendant's harassment and alleged it was motivated by race. He said Defendant fired him and alleged it was motived by race. And Abney's omission from the complaint of a day-to-day log of slights (see above) is not at all the same as the omission from the complaint in *Concentra* of the specific action for which the plaintiff alleged the defendant retaliated against him. As *Concentra* aptly opined, omission of the specific action in a retaliation case would be akin to the omission of the *basis* in a discrimination case:

> The proper analogue for the present complaint is not a complaint alleging racial discrimination in hiring; it is a complaint in which the plaintiff withholds the basis upon which she suspects her employer acted: "I was turned down for a job for a reason forbidden by Title VII."

*Id.*

If Abney were required to allege more facts about the particulars of the harassment, how much is enough? A daily log? A weekly log? A quarterly summary? Something *like* that might be appropriate in the context of summary judgment (and the evidence adduced in discovery will necessarily provide the foundation for such a summary – a name even exists for it in the Northern District of Illinois: a LR 53 statement). At the pleading stage however, Abney's description using examples is efficient (the ancient purpose of the shift to notice pleading), and it is more than sufficient. "Requiring a more detailed complaint would . . . replicate[ ] the inefficient chase for facts decried in *Bennett* . . . ." *Id.*

Nonetheless, the allegations in Abney's complaint go far beyond what *Concentra* and a host of other case law requires (see *Jibson*, No. 18 C 5594, at *8 (collecting cases)). People:

> have reasonably clear ideas of how a racially biased person might behave, and a defendant responding to an allegation of racial bias can anticipate the sort of evidence that may be brought to bear and can investigate the claim (by inquiring if any decision-making employees have a background of making racially insensitive comments and the like).

*Concentra*, 496 F.3d at 782 (parenthetical in original). Not only did Abney describe Defendant's harassment and allege that it was motivated by race (all that is required), but he unequivocally tied it to race with examples of how his superiors in the organization, and his manager, *expressly admitted* as they harassed him that they held a belief in negative stereotypes about race and work ethic (see above).

What is more, Abney alleged his superiors[5] in the organization *often* called to him by saying "boy" (an unquestionably racist epithet in the circumstances) (see above). In *Nichols*, in

[5] For the proposition that, "Illinois courts apply the federal Title VII framework to IHRA claims . . . ," Defendant cites *Volling v. Kurtz Paramedic Services*, 840 F.3d 378, 383 (7th Cir. 2016). Mtn. p. 5, n4. Defendants are generally correct. Yet subtle differences exist. For example, under federal law, employers are strictly or vicariously

the context of summary judgment, the court said it was "a close call whether the conduct here is severe or pervasive" enough for a hostile work environment claim to survive. 755 F.3d at 601. The plaintiff in *Nichols* did not survive summary judgment; but it was a "close call." *Id.* In *Nichols*, the plaintiff cited:

> six incidents of harassment that he claims occurred during the 2 1/2 weeks that he worked at Springfield Elementary: (1) Johnston (his co-worker) calling him "black n——r"; (2) Johnston saying "where that boy at?" without knowing that Nichols was within earshot; (3) Johnston bringing Nichols food, but slamming the tray into his chest; (4) Springfield employees not telling him where the janitor's closet was located; (5) Springfield employees making a mess for him to clean up; and (6) Springfield employees allegedly baiting him to steal a purse and money from an open register.
>
> *Experiencing six instances of harassment*, if true, over the course of 2 1/2 weeks *weighs in his favor* . . .

*Id.* (emphasis added). Abney's case sits at the pleading stage and he has alleged at least nine different *types* of harassment to which Defendant subjected him throughout the course of his employment, becoming progressively worse until he was ultimately fired.

Further, the racial epithets in *Nichols* were uttered on three occasions, over the course of two and half weeks, by the plaintiff's *co-worker*. Abney's superiors in Defendant's organization called him "boy" often, throughout the course of his employment. "We have repeatedly treated a supervisor's use of racially toxic language in the workplace as much more serious than a co-worker's . . . , [and it] is particularly true when supervisors address these derogatory and humiliating remarks directly to the employees in question." *Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 638 (7th Cir. 2019). "This distinction [between co-workers and supervisors] is critical.

---

liable for harassment only if perpetrated by a supervisor or manager who had authority to "hire, fire, demote, promote, transfer, or discipline" the complaining employee. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). Not so under Illinois law. See *Rozsavolgyi v. City of Aurora*, 2016 Ill. App. 2d 150493 at ¶ 29 (citing *Sangamon County Sheriff's Department v. Human Rights Comm'n*, 233 Ill.2d 125, 138–41, (2009)) ("employers are strictly liable for sexual harassment by supervisory employees, even where the supervisory worker has no authority to affect the terms and conditions of the complaining employee's employment and regardless of whether the employer was aware of the harassment or took measures to correct it").

*Id*. In *Gates*, Seventh Circuit reversed the district court's grant of summary judgment and held that, "if a jury credits Gates's testimony about [his supervisor] Rivera's comments, it could reasonably find that Gates suffered an actionable hostile work environment." *Id.* at 640. Rivera had used "three racial slurs in a sixth-month period of a four-year employment . . . , [which the district court had erroneously found to be] not objectively offensive, and not particularly severe, physically threatening, *or* humiliating'" *Id.* at 639 (internal quotation marks omitted) (emphasis added).[6]

Not only did Abney's superiors in Defendant's organization often call him "boy," they called him "slow" without objective justification and said he was not a good worker without objective justification. Comp. at ¶ 89. They often told him his predecessor was a better worker specifically because he [Abney's predecessor] was Hispanic.[7] Comp. at ¶ 84. According to the National Museum of African American History & Culture, negative stereotypes abound regarding African Americans and work ethic.[8] Many:

> of the stereotypes created during the height of the trans-Atlantic Slave Trade and were used to help commodify black bodies and justify the business of slavery. For instance, an enslaved person, forced under violence to work from sunrise to sunset, could hardly be described as lazy. Yet laziness . . . historically became [a] stereotype[ ] assigned to African Americans.

*Id.*; see also Cordell, LaDoris Hazzard, *Black Immigration: Disavowing the Stereotype of the Shiftless Negro*, 25 Judges J. 19 (1986). Defendant left Abney no doubt that they believed this

---

[6] *Gates* was another case against Defendant in which an Hispanic supervisor harassed an African American employee.

[7] Defendant tries to make an issue of the fact that Abney does not remember (or perhaps he was never told) the name of his predecessor. This is a red herring. It makes no difference whether Abney knew his predecessor's name or, for that matter, whether his predecessor were actually Hispanic or whether he even existed at all. For obvious reasons, what matters is that Abney's supervisors said he was Hispanic and made the negative, racial comparison often.

[8] *Popular and Pervasive Stereotypes of African Americans*, https://nmaahc.si.edu/blog-post/popular-and-pervasive-stereotypes-african-americans (last accessed 10/10/20).

stereotype: they told him expressly that *he would be a better worker if only he were Hispanic*. Comp. at ¶ 84.

"The Supreme Court's decision in *Harris* [*v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)] established that something short of the Ninth Ring may violate Title VII." *Gates*, 916 F.3d at 637 (citation and quotation marks omitted; bracketed text added). A workplace "need not be 'hellish' to constitute a hostile work environment" *Id.* (quoting *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017)) (some internal quotation marks omitted). "'Title VII comes into play before the harassing conduct leads to a nervous breakdown.'" *Id.* at 633 (quoting *Harris*, 510 U.S. at 21-2).

As noted above, "People have reasonably clear ideas of how a racially biased person might behave." *Concentra*, 496 F.3d at 782. Abney alleged more than enough to give Defendant "notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected" *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010). If what is alleged in the complaint were evidence, reasonable jurors could decide that what befell Abney, the ongoing harassment and ultimate firing, was motivated by the admitted racial bias of his manager and supervisors (which can be imparted vicariously to Defendant) (see *Rozsavolgyi v. City of Aurora*, 2016 Ill. App. 2d 150493 at ¶ 29). *A fortiori*, in the context of Rule 12, where the allegations in the complaint must be taken as true, Abney has stated a claim upon which relief can be granted.

**C. Unlike retaliation, harassment is just a species of discrimination, and Defendant's focus upon it at this stage is premature.**

"'Complaints plead grievances, not legal theories,' and a plaintiff's complaint need only 'spell[ ] out his grievance.'" *Prayitno*, No. 17 C 4310, at *8 (quoting *Koger*, 950 F.3d at 974). A "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal" *Bartholet*, 953 F.2d at 1078. "Complaints in a system of notice pleading initiate the litigation but

recede into the background as the case progresses. Later documents, such as the pretrial order under Rule 16(e), refine the claims; briefs and memoranda supply the legal arguments that bridge the gap between facts and judgments." *Id.*

The "hostile work environment" claim that Defendant attacks is a legal theory. Indeed, "harassment," or "hostile work environment," on the basis of race was not explicitly set forth in the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, until Illinois Public Act 101-0221 became effective on January 1, 2020, which amended to IHRA to explicitly define "harassment" (other than sexual harassment) and add it to the express list of what constitutes a civil rights violation. See 775 ILCS 5/2-102(A); 775 ILCS 5/2-101(E-1). Defendant fired Abney on January 23, 2019, before the enactment of Public Act 101-0221. Comp. at ¶ 21. Theretofore, actions under the IHRA, for "hostile work environment" based on race, were analyzed as a species of discrimination. See *Rozsavolgyi*, 2016 Ill. App. 2d 150493 at ¶ 39 ("First District upheld the Commission's determination that a racially charged atmosphere in a police department amounted to racial harassment, and thus, *constituted discrimination* based on race within the meaning of the Human Rights Act . . . [even though] [r]acial harassment, like disability harassment, is not explicitly addressed in the statute.") (quoting parenthetically *Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n*, 184 Ill.App.3d 339, 351, (1989)) (emphasis added; quotation marks and parentheses omitted; bracketed text supplied).[9]

Prior to the enactment of Public Act 101-0221, during which time Abney was harassed and fired, an IHRA "hostile work environment" claim was a legal construct of the courts – a

[9] The amendment to the IHRA was not a *sub silencio* statement by the legislature implying harassment had not been actionable before Public Act 101-0221 because the addition of the express language treating harassment based on race only served to clarify the statute's intent; the same situation occurred when the legislature amended the IHRA to expressly include nearly identical language treating sexual harassment. See *Rozsavolgyi*, 2016 Ill. App. 2d 150493 at ¶ 42, 48, 50.

legal theory. Abney was not required to plead it by name in his complaint. Rather, Abney alleged what happened and the harm it caused him, and that it constituted unlawful discrimination under the IHRA based on race. It remains to be seen whether Abney can satisfy his burden of production by marshalling sufficient evidence to support a hostile work environment theory, a wrongful termination theory, or both, but this must be hashed out at summary judgment time and at trial. The claims will be refined and circumscribed by the LR 53 statement, the pretrial order, motions in limine and *remittitur* as they may, or may not be, supported by the evidence.

At the summary judgment stage, to sustain an IHRA harassment claim, Abney must produce sufficient evidence to show that a jury could find: "(1) he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category);[10] (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Gates*, 916 F.3d at 636. When taken as true, the facts alleged in the complaint establish all of these four elements.

Elements (1) and (2) are established above; they are more than satisfied. With regard to element (3), especially when Defendant's actions (hypervigilant monitoring, ordering Abney to re-do tasks without objective reason, etc.) were inextricably intertwined with admitted, racial prejudice about work ethic, the prejudice is itself what caused the conditions to be altered (for example: Hispanic employees were not required to perform tasks multiple times for no objective reason; Hispanic employees were not reprimanded and disciplined for minutiae that would go

[10] Interestingly, Defendant answered Abney's allegations concerning harassment based on disability (and for that matter, failure to accommodate) instead of making a Rule 12 motion. This reinforces the fact that, despite its apparent complexity, Defendant's motion really just claims that Abney needs to plead more facts in order to tie his harassment allegations to race. But as shown above, Abney has more than adequately tied the harassment he endured to racial prejudice.

unnoticed but for the hypervigilant monitoring; Hispanic employees were not required to wait ten to fifteen minutes each morning before being let into the building). Ultimately, Defendant fired Abney for pretextual reasons that were infected with racial prejudice and "teed-up" by the underlying harassment. Lastly, with regard to element (4), Defendant is strictly or vicariously liable for the harassing conduct of supervisory employees (even where the supervisory worker has no authority to affect the terms and conditions of the complaining employee's employment and regardless of whether the employer was aware of the harassment or took measures to correct it). See *Rozsavolgyi*, 2016 Ill. App. 2d 150493 at ¶ 29 (citing *Sangamon County Sheriff's Department v. Human Rights Comm'n*, 233 Ill.2d 125, 138–41, (2009).

Relevant to this inquiry are "the severity of the alleged conduct, its frequency, whether it [wa]s physically threatening *or humiliating* (or merely offensive), and whether it unreasonably interfere[d] with the employee's work performance." *Gates*, 916 F.3d at 636 (emphasis added; citation and quotation marks omitted; brackets and parentheses in original). As shown above, Defendant's conduct was more severe and frequent than the conduct of the defendant in *Gates* (in which case the plaintiff survived summary judgment). Defendant's conduct was humiliating objectively. It was humiliating subjectively. See Comp. at ¶ 96. It interfered with Abney's work (see above).

**D. Like *Bakker*, Defendant's other Rule 12 cases are distinguishable.**

In *Bakker*, the plaintiff's own allegations ruled out the kind of ongoing harassment Abney described in his complaint, and it is therefore distinguishable. The other cases Defendant cites, that address Rule 12, treat similar circumstances in which plaintiffs' allegations themselves foreclose actionable, pervasive harassment. Defendants cherry-pick from the examples used by Abney, and reference cases that might be applicable to each of them when isolated in a vacuum,

but not in the context of Abney's complaint as a whole. The allegations in the complaint satisfy the test in *Gates* in the context of summary judgment. *A fortiori*, then, they state a claim upon which relief can be granted and Defendant's Rule 12 motion must be denied.

WHEREFORE, the plaintiff prays that this Court will:

A. Deny Defendant's motion to dismiss styled "Defendant's Motion to Dismiss Count IV of Plaintiff Tariq Abney's Complaint" [Doc. 20] in its entirety; and

B. Grant such further relief as may be fair and just in the premises.

Respectfully submitted,

/s/Paul Luka
Attorney for Plaintiff

Paul Luka
paul@mendozalaw.net
Mendoza Law, P.C.
120 S. State St., Ste. 400
Chicago, IL 60603
(312) 508-6010 (voice and fax)

Michelle M. Truesdale
mich7472@aol.com
Michelle M. Truesdale Attorney at Law
5310 N. Harlem Avenue Suite 210
Chicago, IL 60656
(312) 342-1400

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that he served the attached document on all parties of record via the Court's CM/ECF system on the date listed above in electronic file stamp.

/s/Paul Luka
Attorney for Plaintiff